UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAMON'S RESTAURANTS, INC.**

      **Plaintiff,**                            Case No. 2:06-cv-544
                                          JUDGE GREGORY L. FROST
      v.                                 Magistrate Judge Norah M. King

**SUN PACIFIC MANAGEMENT, LLC, et al.,**

      **Defendants.**

**OPINION AND ORDER**

This matter comes before this Court for consideration of a Motion to Dismiss Certain Claims, Motion to Compel Arbitration of Such Claims, and Motion to Stay this Action Pending Arbitration (Doc. # 19) filed by Defendant, Sun Pacific Management ("SPM"); a Memorandum in Opposition (Doc. # 21) filed by Plaintiff, Damon's Restaurants, Inc.("Damon's); and a Reply Memorandum. (Doc. # 22.)  For the reasons that follow, this Court **GRANTS** in part and **DENIES** in part Defendant's Motion.  (Doc. # 19.)

**I. Facts**

On or about June 3, 2002 and on or about February 27, 2003, Damon's entered into franchising agreements with SPM, which was signed by M. Jamil Akhtar and Mrs. Joan Akhtar (hereinafter Akhtars) as a members of SPM.  (Doc. # 1-1 ¶¶ 7, 20.)  The franchising agreements were for a ten-year period.  The franchising agreements allowed SPM to use the naming designations and trademarks of Damon's in the operation of their business and provided that "the use of any other trade name in conducting such business of this franchise is strictly prohibited."

1

The agreements also required SPM to pay royalty fees to Damon's.[1] *Id*. ¶¶ 9, 10. Subsequent to efforts by Damon's to collect on amounts due from SPM under the franchising agreements, Damon's learned that the name of the restaurants had been changed but the restaurants were still utilizing Damon's menu, emulating the look of Damon's, and even using the Damon's trademark on "receipts, food and beverage licenses and kitchen staff attire." *Id*. ¶ 13. Damon's provided SPM and Akhtar[s] with notice of the termination of the franchising agreements, and as of June 24, 2006 the restaurant at issue was still operating as previously alleged by Damon's.[2] *Id*. ¶¶ 17-18.

Damon's filed suit against SPM and the Akhtars in this Court on June 30, 2006 alleging nine separate counts and requesting ten measures of relief. *Id*. ¶¶ 1-10, 21-64. SPM and the Akhtars responded seeking to compel arbitration of certain claims, to dismiss the allegedly arbitrable claims, to stay the remaining matters pending arbitration, and to grant their motion to dismiss for lack of personal jurisdiction over the Akhtars. (Doc. # 19.)

## II. Discussion

At present this dispute between the parties centers on which claims are subject to Section XXVI of each Franchise Agreement ("arbitration clause"), which sets forth a broad arbitration clause followed by three narrow exceptions. It states:

---

[1] In addition, the franchising agreements forbade SPM and Akhtar from engaging in other competitive activity set forth in Doc. # 1 ¶ 11-12.

[2] The franchising agreements terminated automatically if the franchisee "voluntarily abandons the Damon's restaurant, . . . defaults in the payment of any fee due under the Agreement, . . . or competes with Damon's during the term of the Agreement." (Doc. # 1-1¶ 14.) SPM is then obligated on termination to do the following: (1) pay to Damon's all outstanding amounts, (2) return all Damon's materials, (3) discontinue advertising as a franchisee and the use of Damon's trademarks, and (4) change the character and look of the restaurant. *Id.* ¶ 15. Also under the franchising agreements, all costs incurred as a result of the default are incurred by the aggrieved party. *Id.* ¶ 19.

>[That] any claim or controversy arising out of or relating to this Agreement
>
>or the breach hereof or any other part of their relationship . . . shall be
>submitted to arbitration . . . which decision shall be binding on
>Franchisor and Franchisee.

(Doc. # 19 at 3.)

There are three exceptions that are not subject to arbitration, including: actions to "collect past due royalties," "prevent the improper use of or an infringement upon [Damon's] marks," or "to stop the opening of a Damon's Restaurant." *Id.*

This Court must determine which claims are arbitrable and which claims fall within the exception to the arbitration clause. The Supreme Court has stated that:

>The Federal Arbitration Act ("FAA") establishes that, as a matter
>of federal law, any doubts concerning the scope of arbitrable issues
>should be resolved in favor of arbitration, whether the problem at
>hand is the construction of the contract language itself or an allegation
>of waiver, delay, or a like defense of arbitrability.

*Moses H. Cone Mem'l Hosp v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see* 9 U.S.C. § 2.

First, the parties have agreed that the following claims fall within the exceptions to the arbitration clause and therefore are non-arbitrable: paragraph 24(g) of Count Two, Count Three, Four, Five, Six,[3] Seven, and paragraphs 54 and 55 of Count Eight. (Doc. # 21 at 3; Doc. # 19 at 4.) Additionally, this Court concludes that the following claims are also non-arbitrable: Paragraph 56 of Count 8, Paragraph 24(a) of Count Two, and Paragraph 24(d) of Count Two with respect to the amount claimed to past due royalty fees. Conversely, this Court concludes, based on the broad language of the arbitration clause and its three narrow exceptions that the following claims must be referred to arbitration: Count One, Count Nine, and Paragraphs 24(b),

---

[3] Parties have agreed not to invoke the arbitration clause with respect to Count 6.

3

24(d) with respect to the amount claimed to be past due advertising fees, 24(h) of Count Two.

With respect to the arbitrable claims aforementioned, this Court concludes that it will not dismiss them, but rather it will stay the arbitrable claims pending the arbitration proceeding. As for the non-arbitrable claims, this Court will adjudicate them. Thus, it will not stay those claims pending resolution of the arbitrable claims because of the immediacy of the alleged facts surrounding Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 4), a hearing on which will be held in this Court on November 29, 2006 as previously scheduled.

Finally, this Court rejects Defendant's argument that this Court should grant its Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over the Akhtars. (Doc. # 19.) Rather, this Court finds that it has personal jurisdiction over the Akhtars because the Akhtars executed the franchise agreements as guarantors and are thus subject to the franchise agreements' forum selection and jurisdictional provisions. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985).

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion. (Doc. # 19).

**IT IS SO ORDERED**.

 **/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**